1   BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
    Kathryn A. Schofield (Bar No. 202939)
2   Alan R. Plutzik (Bar No. 077785)
    L. Timothy Fisher (Bar No. 191626)
3   2125 Oak Grove Road, Suite 120
    Walnut Creek, California  94598
4   Telephone: (925) 945-0200
    Facsimile:  (925) 945-8792
5
    SCHIFFRIN & BARROWAY LLP
6   Eric L. Zagar
    Sandra G. Smith
7   280 King of Prussia Road
    Radnor, PA  19087
8   Telephone:  (610) 667-7706
    Facsimile:  (610) 667-7056
9
    Attorneys for Plaintiff
10

ORIGINAL
FILED

JUL 2 0 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

11              UNITED STATES DISTRICT COURT

12             NORTHERN DISTRICT OF CALIFORNIA

13                    SAN JOSE DIVISION

C 06   4460
RMW   PVT

14  JOEL MANDEL, Derivatively on Behalf of          Case No.
    Nominal Defendant SIGMA DESIGNS, INC.,
15                                                   **SHAREHOLDER DERIVATIVE**
                            Plaintiff,               **COMPLAINT**
16
17          v.

18  THINH Q. TRAN, SILVIO PERICH, Q. BINH
    TRINH, JACQUES MARTINELLA, PREM
19  TALREJA, WILLIAM K. WONG, KIT TSUI,
    KENNETH A. LOWE, JULIEN NGUYEN,
20  WILLIAM J. ALMON, and LUNG C. TSAI,

21                          Defendants,

22          and                                      **JURY TRIAL DEMANDED**

23  SIGMA DESIGNS, INC.,

24                          Nominal Defendant.

25
26
27
28
    SHAREHOLDER DERIVATIVE COMPLAINT
    CASE NO.
    48085

Plaintiff, by his attorneys, submits this Derivative Complaint (the "Complaint") against the defendants named herein.

## NATURE AND SUMMARY OF THE ACTION

1.    This is a shareholder's derivative action brought for the benefit of nominal defendant Sigma Designs, Inc. ("Sigma" or the "Company") against certain members of its Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties, unjust enrichment, statutory violations, and other violations of law.

2.    In gross breach of their fiduciary duties as officers and/or directors of Sigma, the Individual Defendants (as defined herein) colluded with one another to:

   (a)    improperly backdate dozens of grants of Sigma stock options to former Sigma Chairman of the Board and Chief Executive Officer Thinh Q. Tran and several other Sigma executives, in violation of the Company's shareholder-approved stock option plans;

   (b)    improperly record and account for the backdated stock options, in violation of Generally Accepted Accounting Principles;

   (c)    improperly take tax deductions based on the backdated stock options, in violation of Section 162(m) of the Tax Code;

   (d)    produce and disseminate to Sigma shareholders and the market false financial statements and other SEC filings that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options.

3.    As a result of the Individual Defendants' egregious misconduct, Sigma has sustained millions of dollars in damages, and Schroeder and the other recipients of the backdated stock options have garnered millions of dollars in unlawful profits.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs. This Court has supplemental

jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a). This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

5.    Venue is proper in this district because a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this district. One or more of the defendants either resides in or maintains executive offices in this district, and defendants have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this district.

**PARTIES**

6.    Plaintiff Joel Mandel, a citizen of the State of New York, is, and was at all relevant times, a shareholder of nominal defendant Sigma.

7.    Nominal defendant Sigma is a California corporation with its principal executive offices located at 1221 California Circle, Milpitas, California 95035. According to its public filings, Sigma specializes in silicon-based digital media processing solutions for consumer products.

8.    Defendant Thinh Q. Tran ("Tran"), the founder of Sigma, has served as the Company's President, Chief Executive Officer, and Chairman of the Board of Directors since February 1982. Upon information and belief, Tran is a citizen of the State of California.

9.    Defendant Silvio Perich ("Perich") has served as the Company's Senior Vice President, Worldwide Sales since September 1992. Perich also served as the Company's Director, Sales from September 1985 to September 1992. Upon information and belief, Perich is a citizen of the State of California.

10.    Defendant Q. Binh Trinh ("Trinh") served as the Company's Vice President, Finance and Chief Financial Officer from November 1984 to January 1997. Trinh also served as the Company's Secretary from 1993 to January 1997, and as a director from May 1984 to January 1997. Upon information and belief, Trinh is a citizen of the State of California.

1       11.     Defendant Jacques Martinella ("Martinella") has served as the Company's Vice

2  President, Engineering since December 1995. Martinella also served as the Company's Director,

3  VLSI Engineering from May 1994 to December 1995. Upon information and belief, Martinella is

4  a citizen of the State of California.

5       12.     Defendant Prem Talreja ("Talreja") served as the Company's Vice President,

6  Marketing from March 1996 to April 1998. Upon information and belief, Talreja is a citizen of the

7  State of California.

8       13.     Defendant William K. Wong ("Wong") served as the Company's Vice President,

9  Marketing from June 1998 to April 2000. Upon information and belief, Wong is a citizen of the

10  State of California.

11       14.     Defendant Kit Tsui ("Tsui") has served as the Company's Chief Financial Officer

12  since January 2001. Tsui also served as the Company's Chief Accounting Officer from January

13  2000 to January 2001, Interim Chief Financial Officer and Secretary from December 1996 to

14  January 2000, Director of Finance from February 1990 to December 1996, and as Accounting

15  Manager from 1982 to February 1990. Upon information and belief, Tsui is a citizen of the State

16  of California.

17       15.     Defendant Kenneth A. Lowe ("Lowe") had served as the Company's Vice

18  President, Strategic Marketing since December 2000. Lowe also served as the Company's Vice

19  President, Business Development from May 2000 to December 2000. Upon information and

20  belief, Lowe is a citizen of the State of California.

21       16.     Collectively, defendants Tran, Perich, Trinh, Martinella, Talreja, Wong, Tsui, and

22  Lowe are referred to herein as the "Officer Defendants."

23       17.     Defendant William J. Almon ("Almon") has served as a director of Sigma since

24  April 1994. Almon has also served as a member of the Compensation Committee of the Board of

25  Directors ("Compensation Committee") and as a member of the Audit Committee of the Board of

26  Directors ("Audit Committee") since 1994. Upon information and belief, Almon is a citizen of the

27  State of California.

28

---

SHAREHOLDER DERIVATIVE COMPLAINT                                 3
48085

18.    Collectively, defendants Almon and Tsai are referred to herein as the "Compensation Committee Defendants."

19.    Defendant Julien Nguyen ("Nguyen") has served as a director of Sigma since May 2000, and previously served as a director from October 1993 to July 1997. Nguyen has also served as a member of the Audit Committee since April 2001. Nguyen also served as Co-Chairman and Chief Technical Officer of Sigma from February 1995 to October 1996, and as Vice President, Engineering and Chief Technical Officer of Sigma from August 1993 until January 1995. Upon information and belief, Nguyen is a citizen of the State of California.

20.    Collectively, defendants Almon, Tsai, and Nguyen, are referred to herein as the "Compensation Committee Defendants."

21.    Collectively, the Officer Defendants, Compensation Committee Defendants, and Audit Committee Defendants are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

22.    By reason of their positions as officers and/or directors of the Company and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust, loyalty, and due care, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

23.    The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

24.    To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices and controls

of the Company. By virtue of such duties, the officers and directors of the Company were required to, among other things:

    (a)    exercise good faith in ensuring that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business;

    (b)    exercise good faith in ensuring that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, including acting only within the scope of its legal authority;

    (c)    exercise good faith in supervising the preparation, filing and/or dissemination of financial statements, press releases, audits, reports or other information required by law, and in examining and evaluating any reports or examinations, audits, or other financial information concerning the financial condition of the Company; and

    (d)    exercise good faith in ensuring that the Company's financial statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); and

    (e)    refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

    25.    The Individual Defendants were responsible for maintaining and establishing adequate internal accounting controls for the Company and to ensure that the Company's financial statements were based on accurate financial information. According to GAAP, to accomplish the objectives of accurately recording, processing, summarizing, and reporting financial data, a corporation must establish an internal accounting control structure. Among other things, the Individual Defendants were required to:

    (1)    make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer; and

    (2)    devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that –

(a)   transactions are executed in accordance with management's general or specific authorization;

(b)   transactions are recorded as necessary to permit preparation of financial statements in conformity with [GAAP].

26.   Sigma' Audit Committee Charter provides that the Audit Committee shall be responsible for, among other things,

(a)   Directing the Company's independent auditors to review before filing with the SEC the Company's interim financial statements included in the Quarterly Reports on Form 10-Q, using professional standards and procedures for conducting such reviews;

(b)   Reviewing with management, before release, the audited financial statements and Management's Discussion and Analysis in the Company's Annual Report on Form 10-K; and

(c)   Conducting a post-audit review of the financial statements and audit findings, including any significant suggestions for improvements provided to management by the independent auditors.

## FACTUAL ALLEGATIONS

### Stock Option Grants to the Officer Defendants

27.   At all times relevant hereto the Compensation Committee determined the salaries, incentive compensation, and stock option awards for executive officers of Sigma and administered the Company's stock option plans.

28.   From 1994 to 2005, the Compensation Committee granted certain Sigma stock options to the Officer Defendants, as follows:

/   /   /

/   /   /

/   /   /

/   /   /

| Officer | Purported Date of Grant | Exercise Price | Number of Options[1] |
|---|---|---|---|
| Tran | 8/16/94 | $4.88 | 400,000 |
| | 10/18/95 | $4.38 | 120,000 |
| | 4/22/97 | $2.31 | 120,000* |
| | 4/22/97 | $2.31 | 62,459* |
| | 4/22/97 | $2.31 | 297,541* |
| | 4/22/97 | $2.31 | 320,000 |
| | 3/17/98 | $2.91 | 200,000 |
| | 5/31/00 | $3.50 | 50,000 |
| | 11/7/01 | $1.25 | 100,000 |
| | 10/18/02 | $1.69 | 120,000 |
| | 2/20/03 | $3.40 | 120,000 |
| | 8/9/04 | $5.43 | 150,000 |
| | 10/28/05 | $9.89 | 150,000 |
| Perich | 8/16/94 | $4.88 | 20,000 |
| | 10/18/95 | $4.38 | 50,000 |
| | 4/22/97 | $2.31 | 20,000* |
| | 4/22/97 | $2.31 | 30,000* |
| | 4/22/97 | $2.31 | 50,000* |
| | 4/22/97 | $2.31 | 70,000* |
| | 4/22/97 | $2.31 | 35,000 |
| | 3/17/98 | $2.91 | 25,000 |
| | 10/8/98 | $1.00 | 50,000 |
| | 5/31/00 | $3.50 | 25,000 |
| | 11/7/01 | $1.25 | 30,000 |
| | 10/18/02 | $1.69 | 30,000 |
| | 2/20/03 | $3.40 | 25,000 |
| | 8/9/04 | $5.43 | 25,000 |
| | 10/28/05 | $9.89 | 25,000 |
| Martinella | 10/18/95 | $4.38 | 13,882 |
| | 4/22/97 | $2.31 | 3,882* |
| | 4/22/97 | $2.31 | 10,000* |
| | 4/22/97 | $2.31 | 10,000* |
| | 4/22/97 | $2.31 | 22,500* |
| | 4/22/97 | $2.31 | 50,000 |
| | 3/17/98 | $2.91 | 20,000 |

[1] Options marked with "*" were granted pursuant to the Company's April 1997 Option Exchange Program. In April 1997, the Board of Directors offered to all employees (including the Named Officers) the opportunity to cancel outstanding stock options with exercise prices in excess of $2.31 per share (the fair market value of the common stock at that time) in exchange for options exercisable at $2.31 per share which were otherwise identical to the canceled options except for an initial 6-month window in which no options could be exercised.

|        |           |        |         |
|--------|-----------|--------|---------|
|        | 10/8/98   | $1.00  | 20,000  |
|        | 11/1/99[2]| $5.75  | 20,000  |
|        | 5/31/00   | $3.50  | 25,000  |
|        | 11/7/01   | $1.25  | 30,000  |
|        | 10/18/02  | $1.69  | 30,000  |
|        | 2/20/03   | $3.40  | 25,000  |
|        | 8/9/04    | $5.43  | 30,000  |
|        | 10/28/05  | $9.89  | 30,000  |
| Talreja| 3/27/96   | $8.75  | 40,000  |
|        | 4/22/97   | $2.31  | 40,000* |
|        | 4/22/97   | $2.31  | 30,000  |
| Trinh  | 10/18/95  | $4.38  | 25,000  |
| Wong   | 11/1/99   | $5.75  | 15,000  |
| Lowe   | 5/31/00   | $3.50  | 80,000  |
|        | 11/7/01   | $1.25  | 20,000  |
|        | 10/18/02  | $1.69  | 20,000  |
|        | 2/20/03   | $3.40  | 25,000  |
|        | 8/9/04    | $5.43  | 25,000  |
|        | 10/28/05  | $9.89  | 25,000  |
| Tsui   | 5/31/00   | $3.50  | 15,000  |
|        | 11/7/01   | $1.25  | 30,000  |
|        | 10/18/02  | $1.69  | 30,000  |
|        | 2/20/03   | $3.40  | 25,000  |
|        | 8/9/04    | $5.43  | 25,000  |
|        | 10/28/05  | $9.89  | 25,000  |

29.     Pursuant to the terms of the Company's shareholder-approved stock option plans, the exercise price of options must be no less than the closing price of Sigma stock on the date of grant.

30.     Pursuant to APB 25, the applicable GAAP provision at the time of the foregoing stock option grants, if the market price on the date of grant exceeds the exercise price of the options, the company must recognize the difference as an expense.

31.     Pursuant to Section 162(m) of the Tax Code, 26 U.S.C. § 162(m) ("Section 162(m)"), compensation in excess of $1 million per year, including gains on stock options, paid to

---

[2] Expiration date for options granted on 11/1/99 is incorrectly listed in the Company's Proxy Statement filed May 24, 2000 as 11/1/2010. Correct expiration date corresponding with grant price of $5.75 is 11/1/2009, as the fair market value of the Company's stock on 11/1/99 was $5.75.

a corporation's five most highly-compensated officers is tax deductible only if: (i) the compensation is payable solely on account of the attainment of one or more performance goals; (ii) the performance goals are determined by a compensation committee comprised solely of two or more outside directors, (iii) the material terms under which the compensation is to be paid, including the performance goals, are disclosed to shareholders and approved by a majority of the vote in a separate shareholder vote before the payment of the compensation, and (iv) before any payment of such compensation, the compensation committee certifies that the performance goals and any other material terms were in fact satisfied.

32.    In a striking pattern that could not have been the result of chance, each and every one of the foregoing stock option grants was dated just after a sharp drop and just before a substantial rise in Sigma's stock price, as demonstrated in the following chart:

Summary of Option Grants and Surrounding Stock Price Performance:

| Purported Date of Grant | Exercise Price | Stock Price 10 Trading Days Before Grant | Stock Price 10 Trading Days After Grant | % Rise in Stock Price After Grant |
|---|---|---|---|---|
| 8/16/94 | $4.88 | $7.25 | $6.88 | 41.0% |
| 10/18/95 | $4.38 | $5.0025 | $4.75 | 8.4% |
| 3/27/96 | $8.75 | $11.00 | $10.25 | 17.1% |
| 4/22/97 | $2.31 | $3.38 | $3.31 | 43.3% |
| 3/17/98 | $2.91 | $3.31 | $3.03 | 4.1% |
| 10/8/98 | $1.00 | $1.44 | $2.09 | 109% |
| 11/1/99 | $5.75 | $5.87 | $8.44 | 46.8% |
| 5/31/00 | $3.50 | $4.19 | $4.47 | 27.7% |
| 11/7/01 | $1.25 | $1.27 | $1.55 | 24.0% |
| 10/18/02 | $1.69 | $1.88 | $2.36 | 39.6% |
| 2/20/03 | $3.40 | $3.60 | $3.65 | 7.4% |
| 8/9/04 | $5.43 | $5.43 | $7.28 | 34.1% |
| 10/28/05 | $9.89 | $10.45 | $10.79 | 9.1% |

33.    The reason for the extraordinary pattern set forth in the preceding paragraph is that the purported grant dates set forth therein were not the actual dates on which the stock option grants were made. Rather, at the behest of the Officer Defendants, the Committee Defendants improperly backdated the stock option grants to make it appear as though the grants were made on dates when the market price of Sigma stock was lower than the market price on the actual grant

1   dates. This improper backdating, which violated the terms of the Company's shareholder-approved

2   stock option plans, resulted in option grants with lower exercise prices, which improperly increased

3   the value of the options to the Officer Defendants and improperly reduced the amounts the Officer

4   Defendants had to pay the Company upon exercise of the options.

5   ### Dissemination of False Financial Statements

6   34.   As a result of the improper backdating of stock options, the Company, with the

7   knowledge, approval, and participation of each of the Individual Defendants,

8       (a)   violated the terms of the Company's shareholder-approved stock option plans;

9       (b)   violated GAAP by failing to recognize compensation expenses incurred when the

10           improperly backdated options were granted;

11       (c)   violated Section 162(m) by taking tax deductions based on stock option grants that

12           were not payable solely on account of the attainment of one or more performance

13           goals and violated the terms of the Company's shareholder-approved stock option

14           plans; and

15       (d)   produced and disseminated to Sigma shareholders and the market false financial

16           statements that improperly recorded and accounted for the backdated option grants.

17   35.   The Company, with the knowledge, approval, and participation of each of the

18   Individual Defendants, disseminated its false financial statements in, *inter alia*, the following Form

19   10-K filings:

20       (a)   Form 10-K for the year ended January 31, 1995, filed with the SEC on May 1, 1995

21           and signed by defendants Tran, Trinh, Nguyen, and Almon;

22       (b)   Form 10-K405 for the year ended January 31, 1996, filed with the SEC on April 30,

23           1996 and signed by defendants Tran, Nguyen, and Trinh;

24       (c)   Form 10-K for the year ended January 31, 1997, filed with the SEC on May 1, 1997

25           and signed by defendants Tran, Tsui, Nguyen, and Almon;

26       (d)   Form 10-K for the year ended January 31, 1998, filed with the SEC on May 1, 1998

27           and signed by defendants Tran, Tsui, Almon, and Perich;

28

1    (e)    Form 10-K for the year ended January 31, 1999, filed with the SEC on May 3, 1999
2           and signed by defendants Tran, Tsui, and Almon;

3    (f)    Form 10-K405 for the year ended January 31, 2000, filed with the SEC on May 28,
4           2000 and signed by defendants Tran, Tsui, and Almon;

5    (g)    Form 10-K for the year ended February 3, 2001, filed with the SEC on May 4, 2001
6           and signed by defendants Tran, Tsui, Almon, and Nguyen;

7    (h)    Form 10-K for the year ended January 31, 2002, filed with the SEC on May 2, 2002
8           and signed by defendants Tran, Tsui, Almon, and Nguyen;

9    (i)    Form 10-K for the year ended Feburary 1, 2003, filed with the SEC on April 28,
10          2003 and signed by defendants Tran, Tsui, Almon, and Nguyen;

11   (j)    Form 10-K for the year ended January 31, 2004, filed with the SEC on April 15,
12          2004 and signed by defendants Tran, Tsui, Almon, Nguyen, and Tsai;

13   (k)    Form 10-K for the year ended January 29, 2005, filed with the SEC on April 14,
14          2005 and signed by defendants Tran, Tsui, Almon, Nguyen, and Tsai; and

15   (l)    Form 10-K for the year ended January 28, 2006, filed with the SEC on May 8, 2006
16          and signed by defendants Tran, Tsui, Almon, Nguyen, and Tsai.

17   36.    Furthermore, from 1994 to 2005, the Company, with the knowledge, approval, and
18   participation of each of the Individual Defendants, for the purpose and with the effect of concealing
19   the improper option backdating:

20   (a)    disseminated to shareholders and filed with the SEC annual proxy statements that
21          falsely reported the dates of stock option grants to the Officer Defendants; and

22   (b)    filed with the SEC Form 4 filings that falsely reported the dates of stock option
23          grants to the Officer Defendants.

24   37.    On June 26, 2006, *Bloomberg News* reported:

25       Sigma Designs Inc., a maker of computer chips, may have manipulated the
26       timing of its stock option grants to top executives in 10 of the last 11 years,
         according to a new report.

27       In five of those 11 years, the Milipitas, California-based company gave stock
28       options at the company's lowest stock price during the fiscal year to top

---

SHAREHOLDER DERIVATIVE COMPLAINT
48085

11

management, Glass, Lewis & Co. LLC, a San Francisco-based research and forensic accounting firm, said in a report made public today.

"The recurring nature of these enviable outcomes, we believe, increases the likelihood the company either favorably timed or backdated its executives' option grants," said Todd Fernandez, a senior research analyst at Glass Lewis, in the report.

Sigma's questionable timing of options continued even after the enactment of the 2002 Sarbanes-Oxley Act, which requires companies to disclose any transactions involving the company's stock, including stock-option grants, within two days. At least 54 companies face federal or internal investigations for suspicious timing of their option grants.

The Sigma options grants discussed in the report included those to Thinh Tran, the company's founder, chief executive officer and chairman, and other current management. In the four latest fiscal years, after Sarbanes-Oxley went into effect, the company failed to disclose the questionably timed option grants to the U.S. Securities and Exchange Commission in a timely manner, raising questions about whether they may have been backdated, the Glass Lewis report said.

## THE INDIVIDUAL DEFENDANTS' BREACHES OF FIDUCIARY DUTIES

38.     The Officer Defendants breached their fiduciary duties by:

    (a)     colluding with the Compensation Committee Defendants to backdate stock option grants;

    (b)     colluding with the Audit Committee Defendants to violate GAAP and Section 162(m);

    (c)     colluding with the other Individual Defendants to produce and disseminate to Sigma shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

    (d)     colluding with the other Individual Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

39.     The Officer Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

40. The Compensation Committee Defendants breached their fiduciary duties by:

    (a)    colluding with the Officer Defendants to backdate stock option grants;

    (b)    colluding with the Officer Defendants and Audit Committee Defendants to violate GAAP and Section 162(m);

    (c)    colluding with the other Individual Defendants to produce and disseminate to Sigma shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

    (d)    colluding with the other Individual Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

41. The Compensation Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

42. The Audit Committee Defendants breached their fiduciary duties by:

    (a)    colluding with the Officer Defendants to violate GAAP and Section 162(m);

    (b)    colluding with the other Individual Defendants to produce and disseminate to Sigma shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

    (c)    colluding with the other Individual Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

43. The Audit Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

44. As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not

1    limited to, the additional compensation expenses and tax liabilities the Company was required to

2    incur and loss of funds paid to the Company upon exercise of options.

3    ## DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

4        45.    Plaintiff brings this action derivatively in the right and for the benefit of the

5    Company to redress defendants' breaches of fiduciary duties and unjust enrichment.

6        46.    Plaintiff is an owner of Sigma common stock and was an owner of Sigma common

7    stock at all times relevant hereto.

8        47.    Plaintiff will adequately and fairly represent the interests of the Company and its

9    shareholders in enforcing and prosecuting its rights.

10       48.    As a result of the facts set forth herein, plaintiff has not made any demand on the

11   Sigma Board of Directors to institute this action against the Individual Defendants.  Such demand

12   would be a futile and useless act because the Board is incapable of making an independent and

13   disinterested decision to institute and vigorously prosecute this action.

14       49.    The Board currently consists of four directors: defendants Tran, Almon, Nguyen,

15   and Tsai.  The following directors are incapable of independently and disinterestedly considering a

16   demand to commence and vigorously prosecute this action:

17       (a)    Tran, because he is directly interested in the improperly backdated stock option

18              grants complained of herein;

19       (b)    Almon and Tsai, because as members of the Compensation Committee they directly

20              participated in and approved the improper backdating of stock options, as alleged

21              herein.  Moreover, by colluding with the Officer Defendants and others, as alleged

22              herein, Almon and Tsai have demonstrated that they are unable or unwilling to act

23              independently of the Officer Defendants;

24       (c)    Nguyen, Almon, and Tsai, because as members of the Audit Committee they

25              directly participated in and approved the Company's violations of GAAP and

26              Section 162(m), as alleged herein.  Moreover, by colluding with the Officer

27              Defendants and others, as alleged herein, Nguyen, Almon, and Tsai have

28

demonstrated that they are unable or unwilling to act independently of the Officer Defendants;

(d)   Tran, Almon, Nguyen, and Tsai, because as directors of the Company they directly participated in and approved the Company's filing of false financial statements and other SEC filings, as alleged herein.  Moreover, by colluding with the Officer Defendants and others, as alleged herein, Tran, Almon, Nguyen, and Tsai have demonstrated that they are unable or unwilling to act independently of the Officer Defendants.

50.   Furthermore, demand is excused because the misconduct complained of herein was not, and could not have been, an exercise of good faith business judgment.

## COUNT I

### AGAINST THE INDIVIDUAL DEFENDANTS
### FOR BREACH OF FIDUCIARY DUTY

51.   Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

52.   As alleged in detail herein, each of the Individual Defendants had a fiduciary duty to refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

53.   As alleged in detail herein, the Officer Defendants breached their fiduciary duties by:

(a)   colluding with the Compensation Committee Defendants to backdate stock option grants;

(b)   colluding with the Audit Committee Defendants to violate GAAP and Section 162(m);

(c)   colluding with the other Individual Defendants to produce and disseminate to Sigma shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

1      (d)    colluding with the other Individual Defendants to file false proxy statements and

2          false Form 4 filings in order to conceal the improper backdating of stock options.

3      54.    The Officer Defendants' foregoing misconduct was not, and could not have been, an

4  exercise of good faith business judgment.  Rather, it was intended to, and did, unduly benefit the

5  Officer Defendants at the expense of the Company.

6      55.    As alleged in detail herein, the Compensation Committee Defendants breached their

7  fiduciary duties by:

8      (a)    colluding with the Officer Defendants to backdate stock option grants;

9      (b)    colluding with the Officer Defendants and Audit Committee Defendants to violate

10          GAAP and Section 162(m);

11      (c)    colluding with the other Individual Defendants to produce and disseminate to Sigma

12          shareholders and the market false financial statements that improperly recorded and

13          accounted for the backdated option grants and concealed the improper backdating of

14          stock options; and

15      (d)    colluding with the other Individual Defendants to file false proxy statements and

16          false Form 4 filings in order to conceal the improper backdating of stock options.

17      56.    The Compensation Committee Defendants' foregoing misconduct was not, and

18  could not have been, an exercise of good faith business judgment.  Rather, it was intended to, and

19  did, unduly benefit the Officer Defendants at the expense of the Company.

20      57.    As alleged in detail herein, the Audit Committee Defendants breached their

21  fiduciary duties by:

22      (a)    colluding with the Officer Defendants to violate GAAP and Section 162(m);

23      (b)    colluding with the other Individual Defendants to produce and disseminate to Sigma

24          shareholders and the market false financial statements that improperly recorded and

25          accounted for the backdated option grants and concealed the improper backdating of

26          stock options; and

27      (c)    colluding with the other Individual Defendants to file false proxy statements and

28          false Form 4 filings in order to conceal the improper backdating of stock options.

58.     The Audit Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

59.     As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur and loss of funds paid to the Company upon exercise of options.

**COUNT II**

**AGAINST THE INDIVIDUAL DEFENDANTS
FOR VIOLATION OF SECTION 10(b) OF THE SECURITIES
EXCHANGE ACT AND RULE 10b-5 PROMULGATED THEREUNDER**

60.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

61.     Each of the Individual Defendants intentionally or recklessly employed devices, schemes, and artifices to defraud and engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the Company.

62.     The Company relied upon the Individual Defendants' fraud in granting the Officer Defendants options to purchase shares of Sigma common stock.

63.     As a direct and proximate result of the Individual Defendants' fraud the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required incur and loss of funds paid to the Company upon exercise of options.

**COUNT III**

**AGAINST THE OFFICER DEFENDANTS
FOR COMMON LAW RESTITUTION/UNJUST ENRICHMENT**

64.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

65. The Officer Defendants were unjustly enriched by their receipt and retention of backdated stock option grants, as alleged herein, and it would be unconscionable to allow them to retain the benefits thereof.

66. To remedy the Officer Defendants' unjust enrichment, the Court should order them to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized.

WHEREFORE, Plaintiff demands judgment as follows:

A.     Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and statutory violations;

B.     Ordering the Officer Defendants to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized;

C.     Granting appropriate equitable relief to remedy Defendants' breaches of fiduciary duties;

D.     Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.     Granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury.

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil Local Rule 3-16, the undersigned certifies that as of this date, other than the named parties there is no such interest to report.

Dated: July 20, 2006

BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP

_____
Kathryn A. Schofield

Alan R. Plutzik
L. Timothy Fisher
2125 Oak Grove Road, Suite 120
Walnut Creek, California  94598
Telephone:  (925) 945-0200
Facsimile:  (925) 945-8792

SCHIFFRIN & BARROWAY LLP
Eric L. Zagar
Sandra G. Smith
280 King of Prussia Road
Radnor, PA  19087
Telephone:  (610) 667-7706
Facsimile:  (610) 667-7056

*Attorneys for Plaintiff*

07/20/2006 10:18 718-726-5008
GLOBE ELEC SUPPLY
PAGE 03
07/19/2006 14:46
NO.980 0005

Case5:06-cv-04460-RMW  Document1  Filed07/20/06  Page21 of 21

## **VERIFICATION**

I, Joel Mandel, hereby verify that I have reviewed the Complaint and

authorized its filing and that the foregoing is true and correct to the best of my knowledge,

information and belief.

DATE: _____7-19-06_____

_____
**JOEL MANDEL**